[Cite as *State v. Dozier*, 2017-Ohio-4173.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 2016CA00114 |
| | : | |
| LEROY DOZIER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Stark County Court of
                                  Common Pleas, Case No. 2016CR0106

JUDGMENT:                         AFFIRMED

DATE OF JUDGMENT ENTRY:           June 5, 2017

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

JOHN D. FERRERO                            EUGENE CAZANTZES
STARK COUNTY PROSECUTOR                    101 Central Plaza South – Suite 1000
                                           Canton, OH 44702

RONALD MARK CALDWELL
110 Central Plaza South – Suite 510
Canton, OH 44702

*Delaney, P.J.*

{¶1}   Defendant-Appellant Leroy Dozier appeals his conviction and sentence for felonious assault, in violation of R.C. 2903.11, and domestic violence, in violation of R.C. 2919.25, by the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   On January 17, 2016, Defendant-Appellant Leroy Dozier was indicted by the Stark County Grand Jury on one count of felonious assault, a second-degree felony in violation of R.C. R.C. 2903.11(A)(1); one count of domestic violence, a fourth-degree felony in violation of R.C. 2919.25(A); and aggravated menacing, a first-degree misdemeanor in violation of R.C. 2903.21.

{¶3}   Dozier pleaded not guilty. The trial court held a jury trial on March 29, 2016. The following evidence was adduced at the trial.

### A.P.'s Testimony

{¶4}   The State called A.P. as its first witness, the alleged victim in the case. A.P. testified in 2015, she and Dozier were in a romantic relationship and lived together until the relationship deteriorated. Dozier and A.P. broke up and he moved out of the house. Dozier kept a house key. A.P. believed Dozier lived with a woman in Youngstown after their relationship ended, but she and Dozier continued to communicate.

{¶5}   On January 10, 2016, Dozier and A.P. went out for dinner. A.P. observed Dozier seemed intoxicated before they went to dinner. They both had drinks at dinner. After dinner, they went to several bars and had more to drink. They left the bar at 2:30 a.m. and Dozier purchased a six-pack of beer on their way home.

{¶6}    Back at A.P.'s house, A.P. testified Dozier became erratic and made crazy statements. He got sick and A.P. asked him to let her take him to the hospital. A.P. then observed Dozier snort cocaine. A.P. testified Dozier became more erratic and he accused her of taking his cocaine. He became angry with A.P. and proceeded to choke and punch her, knocking her unconscious.

{¶7}    A.P. stated Dozier went to the attic and she heard him speaking aloud with his deceased Uncle Charles. Dozier came back downstairs, appeared to become more enraged, and kicked, punched, and choked A.P. to unconsciousness. When she regained consciousness, Dozier was naked and his penis was near A.P.'s face.

{¶8}    A.P. convinced Dozier to get dressed and go to the car to look for his cocaine. A.P.'s cell phone was in the car and she needed to get him out of the house so she could get her phone. After Dozier dressed, he tried to attack her again. She pushed him down the steps to try to get past him. A.P. testified she and Dozier were choking each other, trying to fight to get out of the house.

{¶9}    Dozier stopped fighting and they reached the car. Once they reached the car, however, A.P. testified Dozier starting punching her and knocking her unconscious again. When she woke up, she heard a neighbor trying to help her. Dozier yelled at the neighbor that he was going to kill her and the neighbor.

{¶10} At some point, A.P. got her cell phone and called the police. Dozier heard her calling the police. He choked her and bashed her head into the pavement as she was making the 911 call. A.P. testified she lost consciousness again and woke up when she urinated on herself.

{¶11} When the police arrived, Dozier stepped off A.P. and walked to the middle of the street. A.P. spoke to the police and the police called for an ambulance. A.P. testified she suffered bruising above her left eye, right side of head, and by her ear. A.P. had redness on her chest and around her neck. She also had scratching and bruising on her neck and chest. Her lip was busted open. The ambulance took A.P. to the hospital. Based on her description of the events, the hospital followed a strangulation protocol. She was given a CAT scan. A.P. testified she had a sore throat, in addition to the bruising and scratches.

**Neighbor's Testimony**

{¶12} The State next called A.P.'s neighbor as a witness. The neighbor had never met A.P. or Dozier. On January 10, 2016, A.P.'s neighbor was sitting in his bedroom with his windows open. He heard arguing close to his house. He went out the back of the house and he saw a man and a woman arguing. He watched the man beat the woman. The neighbor yelled at the man to get off the woman. The man, identified as Dozier, came over to the neighbor and told him he was going to kill him. The neighbor's relative came out and Dozier told them he would kill them both. The neighbor testified Dozier then walked away.

{¶13} The neighbor went back into his house, thinking it was over. He observed Dozier come back and start hitting the woman again. He slammed her on the concrete and hit her head on the railing. The neighbor went back outside and yelled at Dozier to stop hitting a woman. Dozier threatened to shoot him. The police then arrived.

**Police Officer's Testimony**

{¶14} Officer Timothy Thorn of the Canton Police Department was the third witness to testify on behalf of the State. Officer Thorn responded to a call for service on January 10, 2016. When he arrived, he observed a man and a woman in the front of the house and he attempted to separate them. The man and woman were identified as A.P. and Dozier.

{¶15} Officer Thorn asked Dozier to sit in his cruiser while he conducted his investigation. Dozier complied. Officer Thorn spoke with A.P., who told the officer the series of events that led her to calling 911. A.P. told Officer Thorn that Dozier had choked her to unconsciousness. Based on A.P.'s statement that she had been choked and her obvious signs of injury, Officer Thorn called for an ambulance to evaluate A.P.

**Dozier's Testimony**

{¶16} Dozier testified in his defense at trial. Dozier admitted he had a prior conviction for domestic violence. He denied hitting or choking A.P. on January 10, 2016.

{¶17} He testified that after he and A.P. returned home from the bar, they had sex. He then informed A.P. he had to return to Youngstown, but A.P. wanted him to stay. A.P. and Dozier had a verbal argument. Dozier left the house and spoke with the neighbor, but Dozier denied threatening him. Dozier went back into the house to retrieve his things and A.P. argued with him. He left the house and again spoke with the neighbor. The police then arrived.

**Dozier is Found Guilty**

{¶18} After deliberation, the jury found Dozier guilty of one count of felonious assault and one count of domestic violence. The jury found Dozier not guilty of aggravated menacing.

{¶19} The trial court held a sentencing hearing on March 30, 2016 and issued its sentencing entry on April 5, 2016. The trial court sentenced Dozier to six-year term for felonious assault and an 18-month term for domestic violence, to be served concurrently.

{¶20} It is from this conviction and sentence Dozier now appeals.

**ASSIGNMENT OF ERROR**

{¶21} Dozier raises one Assignment of Error:

{¶22} "WAS THERE SUFFICIENT EVIDENCE TO FIND THE APPELLANT GUILTY OF FELONIOUS ASSAULT OR DOMESTIC VIOLENCE AND WAS HIS CONVICTION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

{¶23} Dozier argues his convictions for felonious assault and domestic violence are against the manifest weight and sufficiency of the evidence. We disagree.

{¶24} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶25} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶26} Dozier was found guilty of felonious assault. R.C. 2903.11(A)(1) states, "No person shall knowingly do * * * the following: (1) Cause serious physical harm to another or to another's unborn." "Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01

{¶27} Dozier was also found guilty of domestic violence. R.C. 2919.25(A) states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶28} Dozier argues his convictions are against the manifest weight and sufficiency of the evidence because he did not hit or choke A.P. on January 10, 2016. He also argues he did not cause A.P. serious physical harm on January 10, 2016. We disagree with Dozier and his characterization of the evidence.

{¶29} A.P. testified Dozier hit and choked her multiple times on January 10, 2016. A neighbor witnessed Dozier beating A.P. and slamming her head into the pavement. The State presented photographs of A.P. taken on the night of the incident, showing bruising and redness on her head, neck, and chest. Officer Thorn observed obvious injuries on A.P. and called an ambulance for an evaluation of her injuries. After an evaluation, A.P. was taken to the hospital where she was treated pursuant to the hospital's strangulation protocol. We find there is sufficient evidence to convince the average mind of Dozier's guilt beyond a reasonable doubt.

{¶30} Dozier also contends there was insufficient evidence to conclude Dozier caused serious physical harm to A.P. pursuant to R.C. 2901.01. Dozier testified he and A.P. were drinking that evening and A.P. could have lost consciousness and urinated on

herself due to her intoxication. Dozier further argues the evidence could show that A.P. had a sore throat because she was arguing with him, not because he choked her.

{¶31} A.P. testified Dozier repeatedly choked her to the point where she lost consciousness. While outside the house, A.P. testified she lost consciousness after Dozier choked her again and she involuntarily urinated on herself, causing her to wake up. A neighbor witnessed Dozier beating A.P. and slamming her head into the pavement. Based on A.P.'s allegations and her obvious injuries, Officer Thorn called for a medical evaluation. There was no testimony from Officer Thorn that A.P. appeared to be intoxicated. After the evaluation, the paramedics took A.P. to the hospital where she was treated pursuant to a strangulation protocol. We find there was sufficient evidence by which an average mind could find beyond a reasonable doubt that Dozier caused serious physical harm to A.P. by choking her multiple times to the point of unconsciousness.

{¶32} We find Dozier's convictions are supported by sufficient evidence and that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury neither lost their way nor created a miscarriage of justice in finding Dozier guilty.

**CONCLUSION**

{¶33} Dozier's sole Assignment of Error is overruled.

{¶34} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Hoffman, J. and

Wise, John, J., concur.